IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MAERSK TANKERS MR K/S | § § § | |
| *Plaintiff*, | § § | |
| v. | § § § | C.A. No. _____ |
| M/T SWIFT WINCHESTER (IMO No. 9470909), her engines, tackle, appurtenances, etc., *in rem,* and Winchester Shipping Inc., *in personam*, | § § § § § § | In Admiralty Pursuant to Rule 9(h) |
| *Defendants*. | § § | |

## PLAINTIFF'S VERIFIED ORIGINAL COMPLAINT

Plaintiff, Maersk Tankers MR K/S ("Maersk Tankers"), files its Verified Complaint against the M/T SWIFT WINCHESTER (IMO No. 9470909), her engines, tackle, appurtenances, etc., *in rem,* and Winchester Shipping Inc., *in personam,* and respectfully shows as follows:

### JURISDICTION AND VENUE

1. This is a case of admiralty and maritime jurisdiction under 28 U.S.C. § 1333 and Rule C of the Supplemental Rules for Certain Admiralty & Maritime Claims. This is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2. Venue is proper within this District in accordance with Rule C as the M/T SWIFT WINCHESTER is or will be within the physical jurisdiction of this Court during the pendency of this action.

### PARTIES AND SERVICE OF SUMMONS

1. Plaintiff, Maersk Tankers is a foreign business entity organized and existing under the laws of a foreign country, with an office and place of business located at Holmbladsgade 133,

2300 København S, Denmark. Maersk Tankers serves as the commercial manager of a tanker pool as more fully described herein.

2. Defendant, M/T SWIFT WINCHESTER (IMO No. 9470909), *in rem*, (the "Vessel") was and is an ocean-going cargo ship. This Court has jurisdiction over the vessel *in rem*, as the vessel is or will be within the jurisdiction of this District during the pendency of this action.

3. Defendant, Winchester Shipping Inc. ("Winchester"), as Owner of the M/T SWIFT WINCHESTER is a business entity organized and existing under the laws of a foreign country, with an office and place of business Ajeltake Road, Ajeltake Island, MH96960 Majuro, Marshall Islands ("Registered Owner"). Winchester may be served with process via its managing or general agent, the Captain of the M/T SWIFT WINCHESTER, pursuant to Rule 4(h) of the Federal Rules of Civil Procedures.

## FACTUAL BACKGROUND

**I.  THE POOL AGREEMENT AND PMI CHARTER**

4. On March 30, 2022, Winchester became an additional party ("Participant") in a commercial tanker trading pool known as the Maersk Tankers Pool Agreement dated September 15, 2016 and amended and restated on November 1, 2021 (the "Pool Agreement") thereby agreeing to observe, perform and be bound by all terms and conditions of the Pool Agreement.

5. The Pool Agreement is governed by English law and disputes thereunder are to be referred to London arbitration.

6. Consistent with Clause 15 of the Pool Agreement, Winchester committed the Vessel to the Pool (as defined herein).

7. Plaintiff serves as the commercial manager under the Pool Agreement (the "Pool Commercial Manager"), and in that role is deemed to be the time charterer of the vessels entered in the pool constituted by the Pool Agreement (the "Pool"), including but not limited to the Vessel, and sub-charters out the same to third parties as the disponent owners thereof.

8. Plaintiff, acting in its capacity as Pool Commercial Manager and disponent owner of the Vessel, and pursuant to the Pool Agreement, chartered the Vessel to PMI Trading DAC ("PMI") under a charterparty dated September 1, 2022 (the "PMI Charter"). The PMI Charter called for the carriage of a cargo of CPP (clean petroleum products) from Port Arthur, Texas to Mexico. The PMI Charter provides for the Federal law of the United States and for disputes thereunder to be referred to arbitration in New York.

9. Pursuant to the PMI Charter, on or about September 7, 2022 the Vessel completed loading a cargo of 35257.822 metric tons of Regular Unleaded Gasoline (the "Cargo") at Port Arthur, Texas for discharge at Tuxpan, Veracruz, Mexico.

10. A bill of lading dated September 7, 2022 (the "Bill") was signed by or on behalf of the Vessel's Master naming Atlantic Trading and Marketing Inc. as shipper and was consigned to the order of P.M.I Trading DAC. C/O PEMEX TRANSFORMACION INDUSTRIAL.

11. Following the completion of loading, the Vessel was significantly delayed and/or failed to depart the United States due to various reasons including, but not limited to, the following: (i) alleged marine pollution violations and related investigation by the U.S. Coast Guard and U.S. Department of Justice, and (ii) various mechanical breakdown(s).

12. By reason of the foregoing, PMI and/or their affiliates and/or commercial counterparts have placed Plaintiff on notice of a claim(s) for damages in the approximate amount of USD $6,855,000 to be asserted under the PMI Charter and/or Bill for recovery of its losses,

expenses, liabilities and/or costs and legal fees arising from, related to, or in connection with the foregoing matters including, but not limited to, the delay to the Cargo caused by the alleged violation(s) and/or breakdown(s) of the Vessel (the **"PMI Claim"**).[1]

## II. THE POOL CLAIM

13. Defendant Winchester is contractually obligated to indemnify Plaintiff in accordance with Clause 25.4.2 of the Pool Agreement, which provides that each Participant (i.e., Winchester) undertakes to defend, indemnify and hold harmless the Commercial Pool Manager (i.e., Plaintiff) (on behalf of the Pool's interests) "*against all actions, proceedings, claims, demands or liabilities whatsoever or howsoever arising out of or in connection with the performance of this Pool Agreement….*"

14. In addition to the contractual indemnity provision under Clause 25.4.2, the Pool Agreement imposes various additional obligations upon Owners with respect to the Vessel and its operation.

15. Plaintiff, in its role as the Pool Commercial Manager and consistent with the Pool Agreement, asserts claim for damages against Owners for breach of the Pool Agreement, including, but not limited to, breach of Owners' obligation to defend, indemnify and hold harmless Plaintiff pursuant to Clause 25.4.2 of the Pool Agreement in relation to the PMI Claim, all of the aforesaid giving rise to a maritime lien against the Vessel.

## III. THE ANTICIPATED SALE OF THE VESSEL

16. On September 7, 2022, Winchester informed Plaintiff via email that it intended to withdraw the Vessel from the Pool Agreement as the Vessel was being sold.[2]

---

[1] *See* Exhibit A, Notice of Claim received from PMI dated October 31, 2022.
[2] *See* Exhibit B, Notice of intent to sell Vessel dated September 7, 2022.

17. Winchester has since advised Plaintiff that the Vessel will be removed from the Pool Agreement after its current voyage and that the sale will be completed following redelivery.

18. The Vessel is expected to be redelivered under the Pool Agreement in the immediate future and Plaintiff understands upon information and belief that the proposed sale will take place immediately thereafter.

## RULE C, *IN REM* CLAIM AGAINST THE M/T SWIFT WINCHESTER

19. Plaintiff Maersk Tankers realleges and incorporates by reference each allegation set forth in paragraphs 1 to 16 as if fully set out at length.

20. Under the Federal Maritime Law and Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims, Plaintiff is entitled to arrest the Vessel to enforce its maritime lien. Plaintiff Maersk Tankers has a maritime lien against the M/T SWIFT WINCHESTER in the amount, as nearly as can be calculated, of USD $6,855,000[3] for full recovery of damages in relation to the PMI Claim and otherwise against the Registered Owner and/or the Vessel *in rem* under the Pool Agreement, which may be enforced by the *in rem* seizure of the vessel.

21. Pursuant to Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, Plaintiff Maersk Tankers requests that process in due form of law, according to the practices of this Court, issue against the M/T SWIFT WINCHESTER, her engines, tackle, apparel, etc., in rem, and that all persons claiming any interest in the vessel or in this matter be required to appear and answer the matters set forth above.

---

[3] *See* Exhibit A, Notice of Claim received from PMI dated October 31, 2022.

## CONDITIONS PRECEDENT

22. All conditions precedent have been performed.

23. All and singular, the premises of this Verified Complaint are true and correct and within the admiralty and maritime jurisdiction of the United States and of this Honorable Court.

### REQUEST FOR ARREST OF THE M/T SWIFT WINCHESTER PURSUANT TO SUPPLEMENTAL ADMIRALTY RULE C

24. Plaintiff is filing contemporaneously with this Verified Complaint, a Motion for Issuance of an Order to Seize Vessel with an accompanying Order and Warrant.

### RULE C

25. Pursuant to Supplemental Rule E(5)(a), Gulf Copper requests that the Court fix the principal amount of the bond or other security to obtain the M/T SWIFT WINCHESTER's release at an amount sufficient to cover the amount of the PMI Claim with accrued interest and costs and further requests that the Court require that the bond or other security be conditioned for the maximum permitted by Rule E(5), which permits security up to twice the amount of the PMI claim.

### REQUEST FOR EXPEDITED DISCOVERY

26. Discovery on an expedited basis is within the discretion of the Court. Pursuant to Rule 26(d)(1), "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f) except by...court order." While the Federal Rules of Civil Procedure do not mention a standard for allowing expedited discovery, several courts within the Fifth Circuit have used the "good cause" standard. *BKGTH Prods., LLC v. Doe*, No. CIV.A. 13-5310, 2013 WL 5507297, at *1 (E.D. La. Sept. 30, 2013); *Combat Zone Corp. v. John/Jane Does 1-2*, No. 2:12-cv-00509, 2012 WL 6684711, at *1 (E.D. Tex. Dec. 21, 2012) (collecting cases).

27. The good cause analysis determines whether "good cause" exists to allow for expedited discovery and considers factors such as the "breadth of the discovery requests, the

purpose for requesting expedited discovery, the burden on the defendants to comply with the requests and how far in advance of the typical discovery process the request was made." *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240, n.4 (S.D. Tex. 2011) "In a 'good cause' analysis, a court must examine the discovery request 'on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances.'" *Id.* at 239–40. Although the factors used by Courts may vary, good cause typically exists where "the need for expedited discovery outweighs the prejudice to the responding party." *Id.* The burden of showing good cause is on "the party seeking the expedited discovery." *Id.* at 240. As detailed above, the Vessel is expected to be redelivered under the Pool Agreement in the immediate future. Plaintiff understands upon information and belief that the proposed sale will take place immediately thereafter, as such, a vessel inspection and document production of crucial evidence are warranted on an expedited basis in situations such as this. If the normal delays for discovery are followed, the crucial evidence sought here may be forever lost.[4] The crucial evidence is solely and exclusively within the M/T SWIFT WINCHESTER's control, could be lost once the vessel sails. Accordingly, good cause for expedited discovery exists, since the injunctive relief is necessary to prevent spoliation of this evidence.

**PRAYER FOR RELIEF**

28. For these reasons, Plaintiff prays that this Honorable Court:

   i. Deem this Verified Complaint good and sufficient;

   ii. Issue process in due form of law, according to the rules and practices of this Court, against the M/T SWIFT WINCHESTER, her engines, tackle, and appurtenances, *in rem*, by way of arrest pursuant to Supplemental Admiralty Rule C, and that all persons claiming interest in that vessel be required to appear and to answer under oath, the matters set forth in this Verified Complaint;

---

[4] *See* Exhibit C, Demand for Vessel Inspection and Documents

    iii.    After due proceedings, enter judgment against the M/T SWIFT WINCHESTER, her engines, tackle, and appurtenances, *in rem*, and Winchester Shipping Inc., *in personam*, for the amount of Plaintiff's claim including prejudgment interest, post-judgment interest, court costs, and all other relief as justice and equity allow;

    iv.    Plaintiff agrees to release and hold harmless, and indemnify the United States of America, the United States Marshal, their agents, servants, employees, and all others for whom they are responsible, from any and all liability or responsibility for claims arising from the arrest or attachment of the Vessel;

    v.    That process in due form of law issue against Winchester Shipping Inc., citing it to appear and answer under oath the matters alleged in this Verified Original Complaint, and that judgment in favor of Plaintiff be entered against Winchester Shipping Inc. in the amount of USD $7,355,000, representing the full recovery of damages in relation to the PMI Claim, together with interest to the date of judgment, any other liquidated damages potentially available, attorney's fees, and costs;

    vi.    That the court order; expedited discovery of a vessel inspection and document production;

    vii.    Experts designated by Maersk Tankers (the "MT Experts") shall be permitted to board the Vessel in order to inspect the bridge, engine room, cargo and engine control rooms and other spaces that have or may have and/or contain information or systems relevant to the inspection by Maersk Tankers;

    viii.    The MT Experts shall be permitted the ability to modify, supplement or amend the below Document List to the extent necessary based upon his/her inspection on the Vessel;

    ix.    The MT experts shall be allowed to interview crew as to each of the "Incidents" defined herein;

    x.    The Vessel shall provide all requested Documents to the MT Experts prior to departure from this Court's jurisdiction;

    xi.    In the event of any dispute, this Court shall retain jurisdiction over the Vessel Owner in regard to this Order after the Vessel departs this Court's jurisdiction; and

    xii.    That Plaintiff may have such other, further and different relief as the Court deems just and proper.

29.    Plaintiff further asks that a warrant for the M/T SWIFT WINCHESTER issue and that all persons claiming any interest in the vessel be cited to appear and answer.

Respectfully submitted,

*[signature]*

KELLY M. HAAS
Texas Bar No. 24059874
S.D. Tex. ID No. 870096
khaas@sbsb-eastham.com
1001 McKinney, Suite 1400
Houston, Texas 77002
Telephone: (713) 588-0446
Facsimile: (713) 574-2942
ATTORNEY FOR PLAINTIFF,
MAERSK TANKER MR K/S

OF COUNSEL:

SCHOUEST, BAMDAS, SOSHEA,
BENMAIER & EASTHAM, PLLC

9

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

## **VERIFICATION**

1. I am a member of the law firm Schouest, Bamdas, Soshea, BenMaier & Eastham, PLLC, counsel for the Plaintiff.

2. The facts alleged in the foregoing Complaint are true and correct based upon my information and belief. The basis of my information and belief is the information from Plaintiff, Maersk Tanker MR K/S, and from reviewing various documents and materials provided by Plaintiff.

3. The authorized officers of Plaintiff are not readily available in this District to make verifications on Plaintiff's behalf. I am authorized to make this Verification on Plaintiff's behalf.

4. Pursuant to Rule C of the Supplemental Rules for Certain Admiralty & Maritime Claims, I verify that the facts alleged in the foregoing Complaint are true and correct.

_____
KELLY M. HAAS

SWORN TO AND SUBSCRIBED TO BEFORE ME under my hand and official seal of office this 7th day of November, 2022.

AMY L. DUROCHER
Notary Public, State of Texas
Comm. Expires 03-28-2026
Notary ID 11011460

_____
Notary Public, State of Texas

10

**PLEASE SERVE:**

**The Captain of the M/T SWIFT WINCHESTER, IMO No. 9470909**

**And Issue a Warrant for the Arrest of the M/T SWIFT WINCHESTER**